849 N.E.2d 1220 (2006)
In re P.F.,
Board of School Trustees of the Logansport Community School Corporation, Appellant-Defendant,
v.
P.F., by his next Friend, Stephen Fisher, Appellee-Plaintiff.
No. 09A05-0511-CV-634.
Court of Appeals of Indiana.
July 6, 2006.
*1221 John R. Hillis, Hillis & Hillis, Logansport, IN, Attorney for Appellant.
Robert L. Murray, Logansport, IN, Attorney for Appellee.
Julie M. Slavens, Indianapolis, IN, Amicus Curiae for Indiana School Boards Association.

OPINION
BAKER, Judge.
Appellant-defendant Board of School Trustees of The Logansport Community School Corporation (School Board) appeals from the trial court's order vacating the expulsion of appellee-plaintiff P.F., a Logansport High School student. Specifically, the School Board argues that the trial court misinterpreted the relevant statute by holding that the School Board was required to hear P.F.'s appeal from his expulsion.
Finding that the trial court properly interpreted the statute but that the remedy it imposed was improper, we affirm in part, reverse in part, and remand with instructions to revise its order as follows: (1) vacate the order to the extent that it vacated P.F.'s expulsion; and (2) revise the order to reflect that the School Board must consider P.F.'s appeal on an expedited basis if the trial court first determines that the expulsion is still on P.F.'s record and/or that P.F. was not permitted to make up and receive credit for the schoolwork that he missed during his period of expulsion.

FACTS
During the 2004-2005 school year, P.F. was a sophomore at Logansport High School. On March 18, 2005, P.F. wrote the following statement on a table in the staff office of the student newspaper: "There's a bomb in here. Fear the Magpie." Joint Ex. 1 p. 12-13. On March 29, 2005, the school's maintenance personnel discovered the writing and informed the administration. Subsequently, administrative staff interviewed the newspaper's students *1222 and staff. Following the interview, P.F. approached the administrative staff and admitted that he had written the words on the table.
At that time, P.F. was suspended pending an expulsion hearing. On April 1, 2005, the superintendent of the school corporation appointed an expulsion examiner. Also on April 1, a Notice of Rights for the expulsion hearing was sent to P.F. and his parents. On April 21, 2005, the expulsion examiner conducted P.F.'s expulsion hearing. P.F. was represented by an attorney, who examined and cross-examined witnesses. On May 3, 2005, the expulsion examiner issued her written decision, which was to expel P.F. until May 26, 2005, which was the end of the 2004-2005 school year.
On May 4, 2005, P.F.'s attorney notified the School Board that P.F. intended to appeal the expulsion examiner's decision to the full School Board. On May 9, 2005, the School Board voted not to hear P.F.'s appeal.
On May 20, 2005, P.F. filed a complaint against the School Board, alleging, among other things, that the School Board had no statutory authority to refuse to hear his appeal. On August 18, 2005, both parties stipulated to the facts as they existed in the transcript of the expulsion proceedings.
On September 21, 2005, the trial court entered its corrected and expanded interim order,[1] in which it held, in pertinent part, as follows:
5. The parties sought to comply with the procedure set out at I.C. 20-8.1-5.1-13....
6. After the expulsion meeting and notice of action of the expulsion examiner, the student made a timely written appeal to the governing body.
7. I.C. 20-8.1-5.1-13(f) provided: ["]The governing body may vote not to hear appeals of actions taken under subsection (c). If the governing body votes not to hear appeals, after the date on which the vote is taken a student or parent may appeal only under section 15 of this chapter.["]
8. I.C. 20-8.1-5.1-13(f) has been replaced by the Indiana legislature with I.C. XX-XX-X-XX(f) which provides in part: ["]If the governing body votes to not hear appeals, subsequent to the date on which the vote is taken, a student or parent may appeal only under section 21 of this chapter.["]
9. The governing body's decision not to hear the student's appeal was made 9 May 2005.
10. According to school board meeting minutes of 9 May 2005, the governing body's decision to not hear the student's appeal was based upon alleged Indiana School Boards Association criteria represented to the governing body by the school superintendent, and not the statutory requirements of I.C. 20-8.1-5.1-13.
11. The governing body to date has not considered the written summary of the evidence prepared by the expulsion examiner; nor the arguments of the principal and the student or the student's parent.
12. The court has reviewed the history of I.C. 20-8.1-5.1-13 and finds that the expulsion procedures set out therein, have been interpreted by the Indiana Court of Appeals in Board of School Trustees of Muncie v. Barnell[,] 678 N.E.2d 799. "The decision may be appealed to the school board if the student or the student's parent notifies the school board of their desire to appeal within ten days of receipt of the notice *1223 of action taken. The school board must conduct a hearing at which it will generally consider the written summary of evidence and any arguments made by and on behalf of the school and the student." Muncie @ 802[sic].
13. The student's written appeal to the governing body was made 5 May 2005, four days prior to the governing body's decision to not hear this student's appeal. (While it is clear that the governing body's action was directed to this student's appeal, one could conclude that in accordance with the statutory language, the governing body may act only to not hear student appeals as a policy of the school board in lieu of selectively choosing which student appeals to entertain.)
14. The governing body's decision to not hear the student's appeal in this action was not timely made in accordance with I.C. 20-8.1-5.1-13(d and f).
15. The action taken by the governing body on 9 May 2005 did not comply with the requirements of I.C. 20-8.1-5.1-13(d).
16. Under the facts found in this case, Indiana law requires that school trustees shall hold a meeting to consider the written summary of evidence prepared as a result of the expulsion meeting and the arguments of the respective parties.
* * *
18. The student is entitled by statute to appeal the decision of the expulsion examiner to the governing body.
* * *
THE COURT THEREFORE ISSUES THE FOLLOWING INTERIM ORDER:
1. This matter is remanded back to the school trustees for the sole purpose of entertaining the student's appeal in accordance with I.C. 20-8.1-5.1-13.
Appellant's App. p. 7-8 (emphases in original).
Notwithstanding the fact that the School Board was required by court order to hear P.F.'s appeal, on October 10, 2005, the School Board again voted unanimously not to hear the appeal. On October 18, 2005, the trial court issued an order that duplicated much of its interim order, but went on to conclude, in pertinent part, as follows:
25. ... the court is now informed that the school trustees per official action on 10 October 2005, refuse to follow the order of the court, and will not entertain the student's appeal.

26. That the school trustees' action in refusing to hear the student's appeal is arbitrary, capricious, an abuse of discretion, contrary to law, and in violation of this court's interim order.
* * *
89. That the school trustee's actions in this cause were without observance of the procedure required by law, and did not afford the student with the minimum requirements of due process and the law.
IT IS THEREFORE, ORDERED, AND DECREED:
The expulsion of [P.F.] is set aside and the Logansport Community School Corporation is hereby ordered to permit [P.F.] to complete his school work for the 2004-2005 school year, and be given credit thereon.
Appellant's App. p. 13-18 (emphasis in original). The School Board now appeals.

DISCUSSION AND DECISION
The School Board argues that the trial court erred in concluding that it was *1224 required to hear P.F.'s appeal. Because the parties agree on the pertinent facts, this appeal presents a pure issue of law. Specifically, we must determine whether the trial court properly interpreted the relevant statute. The construction and interpretation of statutes are questions of law that we review de novo. Henderson v. Coutee, 829 N.E.2d 1028, 1030 (Ind.Ct. App.2005). Thus, we give no deference to the trial court's interpretation and, instead, independently review the statute's meaning and apply it to the facts of the case under review. Id.
Our goal when interpreting a statute is "to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience." Bushong v. Williamson, 790 N.E.2d 467, 473 (Ind.2003). If a statute contains clear and unambiguous language, it is not subject to judicial interpretation. Henderson, 829 N.E.2d at 1030. Rather, we must give such a statute its plain and clear meaning. Id.
Although the language of the statute is our first, and often last, step in interpreting legislation, we must also consider how the statute interacts with other provisions in the same legislation. Id. We must consider simultaneously the purpose of the statute and the repercussions of any interpretation. Id. The intent underlying the provision as a whole controls over "the strict literal meaning of any word or term." Bushong, 790 N.E.2d at 471.
Initially, we observe that this case is moot to the extent that the original term of P.F.'s expulsion has expired. But it is not moot to the extent that the expulsion remains on his record; moreover, the record herein does not reveal whether P.F. was permitted to complete and receive credit for the schoolwork that he missed during his term of expulsion. To the extent that he was not so permitted and the expulsion remains on his permanent record, the issue is not moot. For the portion of this case that is moot, however, we note that we may review moot issues in cases that involve questions of significant public importance that are likely to reoccur. City of Evansville v. Zirkelbach, 662 N.E.2d 651, 653 (Ind.Ct.App.1996). Because this case presents such an issue, we will review it in full.
Turning to the substance of the case, at issue are certain provisions of Indiana Code section 20-8.1-5.1-13[2]:
(c) The person conducting an expulsion meeting:
(1) shall make a written summary of the evidence heard at the expulsion meeting;
(2) may take action that the person finds appropriate; and
(3) must give notice of the action taken under subdivision (2) to the student and the student's parents.
(d) If the student or the student's parent within ten (10) days of receipt of a notice of action taken under subsection (c) makes a written appeal to the governing body, the governing body:
(1) shall hold a meeting to consider:
(A) the written summary of evidence prepared under subsection (c)(1); and
(B) the arguments of the principal and the student or the student's parent;

*1225 unless the governing body has voted under subsection (f) not to hear appeals of actions taken under subsection (c); and
(2) may take action that the governing body finds appropriate.
The decision of the governing body may be appealed only under section 15 of this chapter.[3]
* * *
(f) The governing body may vote not to hear appeals of actions taken under subsection (c). If the governing body votes not to hear appeals, after the date on which the vote is taken a student or parent may appeal only under section 15 of this chapter.
(Emphases added).
The School Board argues that this statute enables it to vote on whether to hear students' expulsion appeals on a case-by-case basis. It contends that the statute does not require school boards to have a policy in place regarding how they plan to handle students' appeals as a general matter.
In reviewing this statute, we observe that if a student properly appeals an expulsion, the school board is required to consider that appeal unless it "has voted... not to hear appeals ...." I.C. § 20-8.1-5.1-13(d) (emphasis added). Because "has voted" is in the past tense, it necessarily means that the school board must have taken a vote prior to the student's initiation of his appeal. Moreover, in subsection (f), the statute provides that if the school board votes not to hear appeals, "after the date on which the vote is taken a student or parent may appeal only" via judicial review. Id.13(f). Thus, it is apparent that a school board is required to hear a student's appeal unless it had already voted not to hear such appeals prior to the initiation of that individual's appeal.
As to what the vote must encompass, the statute requires that the school board must have voted not to hear "appeals," which is written in the plural, rather than the singular, indicating that the school board's vote on this matter must be broader than one student's appeal. Adding more support to this interpretation is subsection (f) of the same statute, which permits the school board to vote not to hear "appeals" of expulsions. Under these circumstances, it is apparent to us that the legislature intended that School Boards, if they so choose, must vote once not to hear any expulsion appeals, rather than on a case-by-case basis as argued by the School Board.[4]
The School Board's interpretation of the statute would require us to rewrite subsection (d) to read as follows: "The governing body shall hold a meeting ... unless the *1226 governing body votes not to hear the appeal." Likewise, its interpretation would require us to rewrite subsection (f) to read as follows: "The governing body may vote not to hear an appeal of an action taken under subsection (c)." If the intent of the legislature was to confer upon school boards the authority to make this decision on a case-by-case basis, it would have drafted the statute in that fashion. But the way in which the statute is drafted clearly indicates that school boards, if they so choose, must vote not to hear any expulsion appeals, and only after that vote has taken place are they entitled to refuse to consider such appeals.
Here, even if we construe the School Board's vote not to hear P.F.'s appeal to be a general vote regarding all such appeals, the vote was not taken until four days after P.F. had initiated the appeal. Because the statute only permits the School Board to refuse to hear such an appeal if it "has voted" already not to hear appeals, the School Board was not entitled to refuse to consider P.F.'s appeal. Thus, the trial court properly concluded that the School Board was required to hear P.F.'s appeal.
The remedy imposed by the trial court was to vacate P.F.'s expulsion. This was an improper remedy, inasmuch as the trial court did not have jurisdiction over the substance of the case until the School Board heard and ruled on P.F.'s appeal. See City of Marion v. Howard, 832 N.E.2d 528, 531 (Ind.Ct.App.2005) (holding that a "failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction"), trans. denied. We sympathize with the trial court's frustration, inasmuch as the School Board refused to hear P.F.'s appeal a second time, and in so refusing, violated a court order. In such a situation, the proper remedy would have been to issue a contempt citation against the School Board.
To find a party in contempt for violating a court order, the trial court must find that the party acted with willful disobedience. Harlan Bakeries, Inc. v. Muncy, 835 N.E.2d 1018, 1040 (Ind.Ct.App. 2005). Furthermore, "[t]he order allegedly violated must have been so clear and certain that there could be no question as to what a party must do, or not do, and so there could be no question regarding when the order is violated." Id.
Here, the trial court's interim order clearly and unambiguously required the School Board to consider P.F.'s appeal. Less than a month later, the School Board voted unanimously not to consider P.F.'s appeal. We cannot imagine a stronger case for a clear order that was violated with willful disobedience. The School Board showed complete disrespectand contemptfor the trial court and its order. Under these circumstances, the trial court would have been well within its authority to find the School Board in contempt of court. That would have been the proper remedy, inasmuch as it would have held the School Board accountable for its willful disobedience even as it left P.F.'s appeal in the School Board's hands.

CONCLUSION
We have concluded that the trial court properly interpreted the relevant statute to require school boards, if they so choose, to vote not to hear any appeals from expulsions before they are entitled to refuse to consider such appeals. Here, because the School Board had not taken such a vote before P.F. initiated his appeal, it was required to consider the appeal. The proper remedy following the School Board's willful violation of the trial court's order, however, was not to vacate P.F.'s *1227 expulsion, it was to issue contempt citations against the School Board.
As noted above, the term of P.F.'s expulsion has already come to an end. But the expulsion is, presumably, still on his record, which may make it difficult for him to be accepted to colleges and universities. Moreover, the record does not reveal whether he was permitted to make up and receive credit for the schoolwork he missed during his period of expulsion. We remand this case to the trial court with instructions to determine whether the expulsion is still on P.F.'s record and whether he was permitted to make up the missed schoolwork. If either is the case, we direct the trial court to revise its order by requiring the School Board to consider P.F.'s appeal on an expedited basis. We strongly suggest that the School Board comply with that order.
The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to revise its order as follows: (1) vacate the order to the extent that it vacated P.F.'s expulsion; and (2) revise the order to reflect that the School Board must consider P.F.'s appeal on an expedited basis if the trial court first determines that the expulsion is still on P.F.'s record and/or that P.F. was not permitted to make up and receive credit for the school work that he missed during his period of expulsion.
MAY, J., concurs.
SULLIVAN, J., dissents with opinion.
SULLIVAN, Judge, dissenting.
I respectfully dissent and do so on several different bases.
I first take issue with the majority's interpretation of the statute involved. The majority states:
"the school board must have taken a vote [not to hear an appeal] prior to the student's initiation of his appeal.... Thus, it is apparent that a school board is required to hear a student's appeal unless it had already voted not to hear such appeals prior to the initiation of that individual's appeal." Op. at 1225.
In my view this puts the cart before the horse. Unless and until an appeal is taken to the governing body, i.e., the Board, it appears incongruous to say that the Board may, or must, have previously denied to hear such appeal.
The student has ten days after receiving notice of the expulsion action to start his appeal. The Board must then either vote to deny hearing the appeal or conduct the meeting to consider the evidence and hear argument. If the appeal hearing is denied by the appropriate vote of the Board, the only recourse available to the student is that of judicial review, at which the issue is limited to whether the Board used the proper procedures.
This analysis leads, then, to my questioning of the construction placed upon I.C. § 20-8.1-5.1-13(f), which in part states: "If the governing body votes not to hear appeals, after the date on which the vote is taken a student or parent may appeal only under section 15 of this chapter." (Emphasis supplied). It is crucial, I believe, to note the placement of the comma and to note that there is no comma between the word "taken" and the phrase "a student or parent."[5] Under my reading *1228 of the provision, it merely reflects that after an appeal is taken to the Board and the Board refuses to hear it, the student may only appeal by resort to judicial review. Obviously, the seeking of judicial review would take place "after the date on which the vote [to deny to hear the appeal] is taken." Id.
It seems totally alien to the purpose and policy of the statute permitting appeals to the Board to say, as does the majority here, that a Board may arbitrarily, in a one-shot, one-size-fits-all vote, determine from that date forward not to permit any appeals from disciplinary action, whether suspension or expulsion.
I do not read section 13(d) as does the majority in footnote 4. I do not believe that it permits an appeal "to the court" within ten days of the notice of expulsion. It only covers the appeal to the "governing body." That appeal and a decision by the Board to either deny hearing the appeal or a ruling on the appeal adverse to the student is a condition precedent to judicial review.
Furthermore, I do not find the same significance in the statute's use of the plural "appeals," as does the majority. It may have been more clear for the statute to have said that the Board may vote "not to hear an appeal." But using the plural, in a generic sense, does not in my view militate in favor of the Board establishing a blanket policy to deny any and all appeals; rather it tells me that the decision whether or not to deny any appeal must be made on a case-by-case basis.
Finally, I must respectfully disagree with the conclusion that the trial court lacked jurisdiction over the judicial review petition unless and until the Board "heard and ruled on P.F.'s appeal." Op at 1226. This effectively allows the Board to insulate an expulsion from any judicial review by the mere arbitrary vote to deny to hear any appeal at the administrative level. A reviewing court must be able to obtain subject matter jurisdiction over an adverse ruling on a student's appeal or a denial of a hearing on such an appeal.
In the case before us, on May 3, 2005, the expulsion examiner issued her written decision to expel P.F. He then had ten days from the receipt of the May 3 decision to "make a written appeal" to the Board. It is apparent that the student received the notice of the examiner's decision on or before May 4, 2005 because on that date the attorney for P.F. advised the Board the P.F. "intended to appeal" the expulsion examiner's decision to the full Board. However, he did not file the appeal at that time,[6] yet the Board, on May 9, voted not to hear P.F.'s appeal. The appeal had not yet been taken. Therefore, in my view the denial was premature.
Nevertheless, P.F. had two choices. He could either seek judicial review of the premature denial or seek judicial review of the denial as if he had taken the appeal before the Board's vote to deny a hearing. *1229 In either event he would be seeking a hearing of the expulsion decision before the Board. As earlier noted, the reviewing court considered the posture of the case to be that P.F. had filed his appeal before the Board. This determination was not inappropriate under the circumstances.
The reviewing court's decision to remand for a hearing upon P.F.'s appeal was permissible and should be affirmed.
NOTES
[1] The trial court entered its initial interim order on September 8, 2005.
[2] In 2005, this statute was recodifiedwith no substantive changesas Indiana Code section 20-33-8-19. In this opinion, statutory references will be made to the former version of the statute, which was in effect at the time the relevant events herein occurred.
[3] Indiana Code section 8.1-5.1-20-15, now recodified as Indiana Code section 20-33-38-21, reads as follows: "Judicial review of a governing body's action under this chapter by the circuit or superior court of the county in which a student who is the subject of the governing body's action resides is limited to the issue of whether the governing body acted without following the procedure required under this chapter."
[4] The Indiana School Boards Association (Association), in its amicus brief, argues that this interpretation means that students would be able to appeal to the courts "at any time after a determination is made that the student will be expelled. This could be at the time the student is told by the principal expulsion will be recommended, or when the expulsion examiner has made the determination to expel, or when notice of the expulsion is given." Amicus Br. p. 3. To the contrary, however, the statute clearly states that a student is entitled to appeal, whether to the School Board or to the court, up to ten days after receiving "a notice of action taken" at an expulsion meeting. I.C. § 20-8.1-5.1-13(d). Consequently, there is no support for the Association's slippery slope argument.
[5] Effective July 1, 2005, the provision became codified as I.C. § 20-33-8-19(f) and now reads in pertinent part: "If the governing body votes to not hear appeals, subsequent to the date on which the vote is taken, a student or parent may appeal only under section 21 [the judicial review provision] of this chapter" (emphasis supplied). Placement of the second comma in the amended version of the statute becomes problematical to the construction of the provision in the former statute only if the legislature intended such to alter the meaning of the provision. In any event, however, we are governed by the prior statute.
[6] In the reviewing court's order, however, it was found that: "After the expulsion meeting and notice of action of the expulsion examiner, the student made a timely written appeal to the governing body." Appellant's App at 7. It is apparent that the reviewing court determined that the attorney's notice of intent to appeal was the equivalent of the filing of the appeal so as to appropriately trigger the obligation of the Board to either hold the appeal hearing or deny a hearing on the appeal.