**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2013**

# In the Court of Appeals of Georgia

A13A1636. FULTON COUNTY BOARD OF EDUCATION v. PH-077
D. R. H.

PHIPPS, Chief Judge.

This court granted the application for discretionary appeal of the Fulton County Board of Education ("Local Board") from the superior court's order reversing the decision of the State Board of Education ("State Board") concerning D. R. H.'s expulsion[1] from high school. The superior court remanded the case to the State Board "with direction to vacate the adjudication of expulsion entered against D. R. H." On appeal, the Local Board seeks reversal of the superior court's order, contending that

---

[1] Pursuant to OCGA § 20-2-751: "(1) 'Expulsion' means expulsion of a student from a public school beyond the current school quarter or semester. (2) 'Long-term suspension' means the suspension of a student from a public school for more than ten school days but not beyond the current school quarter or semester. (3) 'Short-term suspension' means the suspension of a student from a public school for not more than ten school days."

the court erred by failing to confine its review to evidence in the record, failing to declare that D. R. H.'s appeal to the State Board was moot, misapplying law in its determination that D. R. H's detention at a youth detention center constituted a disciplinary suspension by school officials, and failing to apply the proper standard of review. For the reasons that follow, we reverse.

The undisputed evidence at a disciplinary hearing before a student disciplinary hearing officer of the Local Board, held on November 16, 2011, showed the following. Officer Christopher Mallard, a school resource officer at D. R. H.'s school, testified that on October 28, 2011, he received radio information that D. R. H. (then 15 years old) was loitering in the hallways of the school. Mallard investigated, and discovered in the second-floor gym area D. R. H. and two other male students "hanging out" in a hallway.

Mallard recognized the three students, and, standing at a distance of "maybe 100 feet" from them, instructed them to come with him. The other two students complied; D. R. H. said to Mallard, "f--k that s--t, man. I'm in gym. I ain't going nowhere." Mallard again ordered D. R. H. to come with him, saying, "[D. R. H.], you are coming with me." D. R. H. replied, "no, I'm not." Mallard began to walk toward D. R. H. As D. R. H. looked at Mallard, D. R. H. was standing in a "very defiant

2

position, defensive position"; D. R. H.'s hands were in front of him, "balled" into fists. Mallard instructed D. R. H. to enter an elevator so they could go to the first floor. D. R. H., still cursing at Mallard, entered the elevator. Mallard and D. R. H. entered the elevator, and Mallard instructed the other two youths to remain on the second floor.

While in the elevator, as Mallard attempted to explain to D. R. H. that his behavior was unacceptable and that he needed to comply with instructions given to him by a law enforcement officer, D. R. H. replied, "I don't care what you are saying. Ain't trying to hear all that." D. R. H. continued to use curse words and inappropriate language toward Mallard, who at that time, decided to handcuff D. R. H. Mallard testified that when he reached to handcuff D. R. H., D. R. H. "shoved me, not with his hands but kind of like with his forearm," making contact with Mallard's arms. As Mallard reached for D. R. H. again, the elevator doors opened and Officer Raymond Parker (another school resource officer), entered the elevator, retrieved his handcuffs, and grabbed D. R. H. to detain him. Mallard testified that D. R. H. resisted being handcuffed by moving his arms around and "tensing up," which made it difficult for the resource officers to put his hands behind his back. The resource officers "finally

3

got [D. R. H.] down to the ground," and handcuffed him. Mallard testified that "in the process," he struck D. R. H. in the neck area. Parker took D. R. H. to the main office.

Parker testified that when, like Mallard, he had been notified that D. R. H. was "up checking the halls," the officers had split up to look for D. R. H. Mallard took the upstairs gym area, and Parker took the downstairs gym area. Parker testified that he encountered D. R. H. and Mallard on the elevator. He testified that D. R. H. was not complying with Mallard's request to put his hands behind his back. Parker testified that D. R. H. was "tensing up" and stood in a "defensive posture" with his hand clenched in a fist. Parker testified that he began to assist Mallard handcuff D. R. H., who was resisting arrest. Parker testified that he was holding D. R. H.'s left arm, and that he and Mallard were "trying to turn [D. R. H.] around just to keep – prevent [D. R. H.] from hitting either one of us." In the process, Mallard was trying to grab D. R. H.'s right arm, and struck D. R. H. on the side of the head. Parker could not recall whether the strike was with a closed fist or open hand.

The assistant principal testified that when D. R. H. was brought into the main office, he was "cuffed, combative, [and] loud." Specifically, D. R. H. was "upset and cursing." He testified that at one point, D. R. H. commented, "n----r think he is something because he got a badge. . . . I will f--k you up." Both resource officers were

4

in the office when D. R. H. made that statement. Parker stayed with D. R. H. until D. R. H. was transported to the "Metro RYDC for detention/incarceration" that night. D. R. H. remained at the youth detention center until October 31, 2011. The assistant principal testified that once D. R. H. was released from the youth detention center, he returned to school.

D. R. H. argued in closing argument that he struck Mallard in self-defense. But the disciplinary hearing officer found that when D. R. H. made contact with Mallard's arms when they were in the elevator alone together, D. R. H. was not acting in self-defense. The hearing officer determined that D. R. H. had violated Rules 4b, 4d, 4e, and 6d of the Fulton County Board of Education Student Code of Conduct.[2] The

---

[2] Rule 4b provides: "A student shall not intentionally make physical contact of an insulting or provoking nature with a school employee, unless such physical contact was in self-defense as provided by OCGA § 16-3-21." Rule 4d provides: "A student shall not threaten bodily harm, or behave in such a way as could reasonably cause physical injury to a school employee." Rule 4e provides: "A student shall not use in an employee's presence abusive words, or obscene language, pictures or gestures tending to cause a breach of the peace." Rule 6d provides: "A student shall not exhibit disrespectful, rude or discourteous behavior or language toward an employee, student or other person while on school property, at school-sponsored events, or while using school technology resources. This can include, but is not limited to, behavior such as using profane, vulgar, or language (written or oral) or gestures towards others; possessing, displaying, or distributing profane, vulgar, pornographic, obscene, or ethnically offensive materials; knowingly and willfully making false reports or statements, whether orally or in writing; falsely accusing others of wrong actions; falsifying school records; forging signatures; failing to comply with

5

hearing officer found that D. R. H. had refused to obey the directive of a school resource officer to accompany the officer to the school office, shoved the officer with his hands, called the officer a derogatory name, and used profane language in the presence of and toward the officer. The hearing officer expelled D. R. H. from school through May 2012, but waived expulsion if D. R. H. chose to enroll in an alternative school.

D. R. H. appealed to the Local Board the hearing officer's decision, claiming that the student disciplinary hearing officer had: (1) violated OCGA § 20-2-754 (b) (2)[3] by holding the disciplinary hearing more than 10 school days after his suspension began; and (2) erred by failing to "correctly apply school rule 4b because there was significant evidence showing [D. R. H.'s] actions were in self-defense." The Local Board adopted the findings of the hearing officer, but modified the disposition and

reasonable directions or commands of authorized school personnel/designees; refusing to identify one's self upon request of any School District employee/designee; failing to attend detention or in-school suspension; and verbal altercations with another person." See OCGA § 20-2-751.5 (a) (1), (2), (3).

[3] OCGA § 20-2-754 (b) (2) (provides pertinently that "[a] disciplinary officer . . . shall . . . ensure that: . . . [t]he hearing is held no later than ten school days after the beginning of the suspension unless the school system and parents or guardians mutually agree to an extension[.]").

6

considered the assigned discipline "complete" as of the date of the Local Board's decision (December 13, 2011).

D. R. H. appealed to the State Board the Local Board's decision, on the ground that the disciplinary hearing was not held within 10 school days of his suspension. And, claiming that the Local Board did not address the merits of his appeal, and "effectively determined that the completion of the expulsion rendered the appeal moot," D. R. H. argued to the State Board that "the issues raised are not moot because [D. R. H.] continues to suffer injury for which relief may be granted." The injury, he claimed, was as to his future ability to gain admission to college. The relief, he claimed, was that the State Board could remove the expulsion from his academic records.

According to the State Board's order, the Local Board's position before the State Board was that the appeal was moot because the punishment imposed by the Local Board had ended. The State Board agreed with the Local Board, noting that the record "does not contain any evidence showing that [D. R. H.] will be adversely affected." However, the State Board, in its decision, went on to recognize its duty to affirm the decision of the Local Board if there was any evidence to support it. Thereupon, the State Board found that D. R. H. had not been suspended from school

before the disciplinary hearing had taken place, and that the evidence supported the Local Board's decision that D. R. H. had violated the Student Code of Conduct.

D. R. H. appealed to the superior court the State Board's decision. The superior court ruled that the State Board had erred when it "found the issues raised by D. R. H. to be moot because, as a student adjudicated at a formal administrative hearing, D. R. H. continues to suffer injury for which relief may be granted," such as the future ability to gain admission into a college or university. The superior court further ruled that when "school employees initiated police contact based on [D. R. H.]'s behavior at the school, and because this action resulted in [D. R. H.'s] removal and loss of educational time, a suspension occurred." Because the disciplinary hearing was not held within 10 days of such "suspension," the court found, the hearing officer "erred when she failed to grant D. R. H.'s motion to dismiss at the outset of the [evidentiary disciplinary] hearing." Therefore, the superior court ruled, the "adjudication of expulsion entered through the formal hearing process was in error and must be VACATED."

1. The Local Board contends that the superior court erred in not confining its review to the record before the Local Board. We agree.

OCGA § 20-2-1160 (e) pertinently states that, "the review by the state board or the superior court shall be confined to the record."[4] "As an appellate body, the [s]uperior [c]ourt . . . (like the State Board of Education) was not authorized to consider matters which had not been raised before the local board."[5]

The superior court, in ruling that the State Board erred when it "found the issues raised by D. R. H. to be moot because, as a student adjudicated at a formal administrative hearing, D. R. H. continues to suffer injury for which relief may be granted," held that D. R. H. would not have known at the time of the evidentiary disciplinary hearing that he needed to present "evidence of future injury," because "[t]he case only became moot . . . after the [Local Board] took the action of modifying the disposition without affecting the adjudication." The superior court cited in its order articles from various newspapers, and also what appeared to be online college admissions applications, none of which were entered in evidence, purportedly

---

[4] See *Johnson v. Pulaski County Bd. of Ed.*, 231 Ga. App. 576, 577 (1) (499 SE2d 345) (1998) ("The superior court's review is on the record of the proceedings").

[5] *Sharpley v. Hall County Bd. of Ed.*, 251 Ga. 54, 55 (1) (303 SE2d 9) (1983); OCGA § 20-2-1160 (e) ("Neither the state board nor the superior court shall consider any question in matters before the local board nor consider the matter de novo, and the review by the state board or the superior court shall be confined to the record.").

9

indicating that many colleges required high schools to submit disciplinary records for prospective students and also asked prospective students to self-report infractions.

The superior court clearly failed to confine its review to the record or the issues raised before the Local Board, contrary to the requirements of OCGA § 20-2-1160 (e). Notwithstanding the trial court's reasoning that whether the case was moot became an issue only after the Local Board modified the disposition but not the adjudication, the duty of the superior court sitting as an appellate court, reviewing the Local Board's administrative decision, was to "determine[] whether there was any evidence to support the agency's decision."[6] The superior court considered a matter de novo from the Local Board, and failed to confine its review to the record, as well as to the issues that had been raised before the Local Board.[7]

---

[6] *Ga. Dept. of Revenue v. Moore*, 317 Ga. App. 31, 32 (730 SE2d 671) (2012)*; Ransum v. Chattooga Count Bd. of Ed.*, 144 Ga. App. 783, 785 (5) (242 SE2d 374) (1978).

[7] See generally *Owen v. Long County Bd. of Ed.*, 245 Ga. 647 (2) (266 SE2d 461) (1980) (subsequent to a hearing at which the local board reaffirmed its decision not to renew school principal's employment contract, his claim of bias was raised for the first time in a list of contentions submitted on appeal to the State Board of Education; "If there has been no issue heard and decided by the county board, there can be no parties and no testimony which the law authorizing an appeal contemplates. It necessarily follows that an aggrieved party's list of contentions, submitted to the state board on appeal, must relate to contested issues at the hearing below and cannot raise new issues.") (citations and punctuation omitted); *Sharpley*, supra; *Ransum*,

2. The Local Board contends that the superior court "erred in its reversal of the State Board's decades-long application of the mootness doctrine to student appeals where assigned discipline has already expired." The Local Board argues that D. R. H.'s "*disciplinary consequence* in this matter has ceased to be live or practical so as to make the judgment not decisive or controlling of actual and contested rights, but a pronouncement having academic interest only."[8] We do not agree with the Local Board's position that D. R. H.'s appeal to the State Board was moot. But we do not find that the State Board applied the "mootness doctrine" to this case; thus, this issue raised in this contention is moot.

"Our review as to conclusions of law is de novo."[9] "An appeal is moot when it seeks to determine an issue which, if resolved, cannot have any practical effect on the underlying controversy, or when such resolution will determine only abstract questions not arising upon existing facts or rights."[10] Pursuant to OCGA § 20-2-1160

_____

supra; OCGA § 20-2-1160 (e).

[8] (Emphasis supplied.)

[9] *Ga. Dept. of Revenue v. Moore*, supra.

[10] *Pimper v. State ex rel. Simpson*, 274 Ga. 624, 626 (555 SE2d 459) (2001) (footnotes omitted).

11

(b), "[a]ny party aggrieved by a decision of the local board rendered on a contested issue after a hearing shall have the right to appeal therefrom to the State Board of Education."

At the disciplinary hearing, in regard to the charge that D. R. H. violated Rule 4b of the Student Code of Conduct, D. R. H. argued that the school failed to show that his physical contact with Mallard was not in self-defense. In D. R. H.'s initial appeal to the Local Board, he asserted that the disciplinary hearing officer's findings that he did not act in self-defense were not supported by the evidence. Thus, whether D. R. H. violated Rule 4b was a contested issue.[11] And when the Local Board rejected D. R. H.'s argument on that issue, adopting the findings of the hearing officer, D. R. H. had a right to appeal that determination to the State Board.[12]

In relying on its longstanding position that student appeals where assigned discipline has already expired are moot, the Local Board cites prior administrative

---

[11] Compare *D. B. v. Clarke County Bd. of Ed.*, 220 Ga. App. 330, 331 (469 SE2d 438) (1996) (student did not dispute the fact that she had violated school rules and state law; she contended only that the punishment administered – permanent expulsion – was unlawful and that her right to due process of law was violated because she had no notice before the incident that her conduct might result in permanent expulsion).

[12] OCGA § 20-2-1160 (b).

decisions by the State Board that are maintained by the Georgia Department of Education,[13] and also cites two cases that were decided by this court, *Benton v. Gwinnett County Bd. of Ed.*,[14] and *Hightower v. Muscogee County School Dist.*[15] Both cases are distinguishable, however; in neither case was this court called to decide whether a determination of misconduct by a local school board becomes moot when the student is no longer serving suspension. In *Benton*, the running of a student's suspension and his withdrawal from school caused to become moot an action he had brought for a declaratory judgment seeking to enjoin enforcement of a "no smoking" rule, to invalidate the school's no smoking rule, and an for order that he be returned to school during the pendency of the litigation.[16] In *Hightower*, a school district took various disciplinary actions against a high school senior who was caught drinking

---

[13] See *Balmer v. Elan Corp.*, 278 Ga. 227, 229-230 (2) (599 SE2d 158) (2004) (appellate courts of this state are bound by decisions of the United States Supreme Court); *Carter v. Scott*, 320 Ga. App. 404, 407 (1) (_ SE2d _) (2013) (cases not decided by Georgia's courts had no binding precedential value); Ga. Const. of 1983, Art. VI, Sec. V, Par. III (Supreme Court decision is binding precedent on Court of Appeals); Court of Appeals Rule 33 (a).

[14] 168 Ga. App. 533 (309 SE2d 680) (1983).

[15] 180 Ga. App. 635 (350 SE2d 25) (1986).

[16] *Benton*, supra at 533-534.

alcohol at the prom, including forbidding him from participating in graduation ceremonies with other members of his class.[17] But the student appealed only the prohibition against participating in the graduation ceremony; by the time the matter reached this court, the date of the ceremony had passed, and this court dismissed the student's appeal as moot.[18]

Here, D. R. H. appealed not only his expulsion, but also the hearing officer's determination that he had committed misconduct. In neither *Benton* nor *Hightower* did the students claim, as did D. R. H., that they did not commit the conduct the schools found that they had committed, or that they suffered any lasting collateral consequences of the schools' decisions. D. R. H. asserted that even though he was no longer expelled from high school, he would continue to suffer adverse consequences because he would have to report the Local Board's determination when he sought college admission.

We agree with the Local Board that the appeal was moot to the extent that the original term of D. R. H.'s expulsion had expired. D. R. H. had served his expulsion,

---

[17] *Hightower*, supra.

[18] Id. at 635-636.

and therefore the term of his expulsion did not involve an existing fact or right.[19] We do not agree, however, that the appeal was moot as to the Local Board's determination of misconduct, and that determination remained on D. R. H.'s school record. It cannot reasonably be said that a determination of misconduct on a student's school record carries no consequences, particularly as it concerns future school discipline[20] or the ability of a student to obtain employment or enter an institution of higher learning later in life.[21] Foreign jurisdictions have recognized that given the permanent nature of the record of expulsion, appeals from expulsions are not moot even if the student has since returned to school (or was assigned to another school).[22]

[19] See generally *Pimper*, supra at 626-627.

[20] See OCGA § 20-2-735 (d).

[21] See e.g. *Goss v. Lopez*, 419 U. S. 565, 567, 574-575, 581, 584 (II), (III) (95 SCt 729, 42 LE2d 725) (1975) (school authorities suspended students from school for periods of up to 10 days based on charges of misconduct and at no time afforded the students a hearing; Court held that students have procedural due process rights to notice and a hearing before suspension, or soon thereafter; Court recognized that "[i]f sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment.").

[22] See *In re P. F.*, 849 NE2d 1220, 1221, 1224, 1227 (Ind. Ct. App. 2006) (finding that to the extent student was not permitted to complete and receive credit for schoolwork student missed during term of expulsion, and expulsion remained on student's permanent record, school board's appeal from the trial court's order

The determination of misconduct was a contested issue before the Local Board, and thus, D. R. H. was allowed to appeal it;[23] the determination of misconduct remained on D. R. H.'s school record, and thus, it was not moot.[24] Accordingly, the superior court did not err in ruling that D. R. H.'s appeal to the State Board was not moot.

---

vacating expulsion of student from school was not moot; court recognized that although the term of student's expulsion had ended, an expulsion still on student's record "may make it difficult for him to be accepted to colleges and universities."); *Doe v. Superintendent of School &c.*, 421 Mass. 117, 118, 123 (653 NE2d 1088) (1995) (in student appeal of judgment upholding her expulsion from school, court found that student had a "real and substantial stake in the outcome of her case," and that the issue of expulsion was not moot even where student had returned to school; recognizing that under federal law, student was "subject to release of educational records, including disciplinary records, without her consent under certain circumstances."); *Massengill v. Bd. of Ed.*, 88 F. R. D. 181, 183, 185, n. 4 (N. D. Ill. 1980) (where student was expelled from school and, upon an order issued by a magistrate, engaged in self study offered through a university, student filed due process violation action against school board; rejecting school's argument that appeal was moot, court stated that "where records of disciplinary action have been kept, the existence of such records stops the action from becoming moot. This is to prevent the unjust occurrence of any 'collateral consequences' arising from information on the records that could possibly harm the student in the future.").

[23] OCGA § 20-2-1160 (b).

[24] See generally *Goss*, supra; cf *Pimper*, supra.

Despite its initial ruling that the appeal was moot, the State Board reviewed the Local Board's decision on the merits.[25] The State Board recognized its duty to affirm the decision of the Local Board if there was any evidence to support it. Thereupon, the State Board found that D. R. H. had not been suspended from school before the disciplinary hearing, and therefore, was provided a timely hearing. The State Board further found:

> In this case, [D. R. H.] was charged with violating the [Local Board's] rules prohibiting physical violence against a school employee, threatening bodily harm, using obscene language and exhibiting disrespectful behavior. The record contains more than sufficient evidence showing that [D. R. H.] cursed and repeatedly refused to follow the directions of the School Resource Officer. The record further shows that [D. R. H.] clenched his fists and shoved the School Resource Officer. Thus, [D. R. H.] was combative, loud, and used obscene language, all of which violates the [Local Board's] rules. Thus, the decision of the [Local Board] is supported by admissible evidence.

---

[25] OCGA § 20-2-1160 (e).

17

Accordingly, the Local Board's appeal of the superior court's ruling as to the contention herein addressed in this Division is itself moot because the State Board ruled on the merits of D. R. H.'s appeal, in favor of the Local Board.[26]

3. The Local Board contends that the superior court misapplied law in ruling that D. R. H.'s detention at a youth detention center constituted a disciplinary suspension by school officials. We agree with the Local Board.

Pursuant to OCGA § 20-2-753 (a), a local board of education "shall appoint a disciplinary hearing officer, panel, or tribunal of school officials to hold a disciplinary hearing following any instance of an alleged violation of the student code of conduct where the principal recommends a suspension or expulsion of longer than ten school days." The "disciplinary officer, panel, or tribunal of school officials appointed . . . shall . . . ensure that . . . [t]he hearing is held no later than ten school days after the beginning of the suspension."[27]

In this case, at the disciplinary hearing, the assistant principal testified that D. R. H. was not suspended for the incident, and that he "followed up with [D. R. H.'s]

---

[26] See generally *Johnson*, supra at 578 (3) (appeal of ruling moot where appellant "has no just cause of complaint").

[27] OCGA § 20-2-754 (b) (2).

[legal guardian ] via telephone conversation and, in fact, informed her . . . that [D. R. H.] was . . . not suspended," and that he was "eligible to return to school after he was released from his incarceration."[28] The parties did not dispute that after the October 28, 2011 incident, D. R. H. remained at the youth detention center until October 31, 2011. The assistant principal testified that once D. R. H. was released from the youth detention center, he did return to school. The disciplinary hearing officer denied a motion to dismiss D. R. H. had made on the ground that the hearing was not being held within the time frame provided by OCGA § 20-2-754.

The superior court ruled that when "school employees initiated police contact based on [D. R. H.]'s behavior at the school, and because this action resulted in [D. R. H.'s] removal and loss of educational time, a suspension occurred." Because the disciplinary hearing was not held within 10 days of such "suspension," the court stated, the hearing officer "erred when she failed to grant D. R. H.'s motion to dismiss at the outset of the [evidentiary disciplinary] hearing." Therefore, the superior court ruled, the "adjudication of expulsion entered through the formal hearing process was in error and must be VACATED."

---

[28] D. R. H.'s legal guardian, although present, did not testify at the disciplinary hearing.

Neither the superior court nor D. R. H. cited authority that supports the position that when school employees initiate contact with officials authorized to determine the placement of a child alleged to have committed a delinquent act, and the child misses educational time, a suspension from school occurs. D. R. H. does point out that a student has a property interest in his or her education, as recognized by the United States Supreme Court in *Goss*[29]; but that determination does not address the issue raised in this Division. This case involves two distinct entities: the juvenile justice system (which in this case includes the juvenile court and the Department of Juvenile Justice) and the local school board. And the authority of each entity to act is governed by statute, and is independent of the other, as set forth below.

Under the statutes providing for the discipline of students in elementary and secondary education,[30] "school administration . . . may, when any alleged criminal action by a student occurs, report the incident to the appropriate law enforcement agency or officer *for investigation to determine if criminal charges or delinquent proceedings should be initiated*."[31] The statutes governing juvenile proceedings in the

---

[29] Supra.

[30] OCGA § 20-2-730 et seq.

[31] OCGA § 20-2-756 (emphasis supplied).

20

court system[32] provide that "[a] person taking a child into custody . . . shall . . . [b]ring the child immediately before the juvenile court or promptly contact a juvenile court *intake officer, . . . [who] shall determine if the child should be released or detained.*"[33] The juvenile justice statutes further provide that a youth detention center "which is under the direction or supervision of the court or other public authority,"[34] is one of several authorized placements for a child alleged to have committed a delinquent act;[35] home placement is also an option.[36] And while a juvenile court may, after a child is adjudicated delinquent and placed on probation, require the child as a condition of probation to pursue a course of study designed to lead to achieving a

---

[32] OCGA § 15-11-1 et seq.

[33] OCGA § § 15-11-47(a) (3), 15-11-2 (10) ("'Juvenile court intake officer' means a juvenile court judge, associate juvenile court judge, court service worker, or person employed as a juvenile probation or intake officer designated by the juvenile court judge or, where there is none, the superior court judge, which person is on duty for the purpose of determining whether any child taken into custody should be released or detained and, if detained, the appropriate place of detention."); 15-11-24.3 (a) (1), (b) ("intake . . . services of the juvenile court of each county may be transferred to and become a part of the state-wide juvenile and intake services and fully funded through the [Department of Juvenile Justice]."

[34] OCGA § 15-11-48 (a) (3).

[35] OCGA § 15-11-48.

[36] OCGA § 15-11-48 (a) (1).

21

high school diploma or the equivalent,[37] we have found no authority permitting either the juvenile court or the Department of Juvenile Justice, at any time, to suspend a student from school.[38]

On the other hand, "[e]ach county of the State is by law made a school district, and the management and control of the schools of the county is confided in the county board of education."[39] Under the statutes providing for the discipline of students in elementary and secondary education,[40] local boards of education are required to adopt policies that "provide for the development of age-appropriate student codes of conduct containing standards of behavior,"[41] "provide for the distribution of [said] student codes of conduct . . . to each student upon enrollment,"[42] and "provide for

---

[37] OCGA § 15-11–66 (c).

[38] See OCGA § 15-11-66 (providing for the disposition of a child adjudicated delinquent).

[39] *Keever v. Bd. of Ed.*, 188 Ga. 299, 300 (1) (3 SE2d 886) (1939); *D. B. v. Clarke County Bd. of Ed.*, supra at 333 (1) ("The Georgia Constitution has delegated the administration and management of local school districts to county and area boards of education."); *Oconee County v. Rowland*, 107 Ga. App. 108, 110 (129 SE2d 373) (1962); Ga. Const. of 1983, Art. VIII, Sec. V, Par. I; OCGA §§ 20-2-4; 20-2-50.

[40] OCGA § 20-2-730 et seq.

[41] OCGA § 20-2-735 (a).

[42] OCGA § 20-2-736 (a).

disciplinary action against students who violate student codes of conduct."[43] Such disciplinary action may include suspension or expulsion from school.[44] We found no authority permitting local boards of education or school officials to interfere with decisions made by juvenile justice officials as to the placement of a child alleged to have committed a delinquent act.

Here, there was evidence that school officials did not suspend D. R. H. based on his conduct in this incident. The assistant principal testified that after the incident, he contacted D. R. H.'s guardian and informed her that D. R. H. was not suspended and could return to school after he was released from the youth detention center; and D. R. H. in fact returned to school after he was released from the youth detention center. School officials did nothing more than exercise their discretion under the law to report alleged criminal action by a student,[45] and there was no evidence that school officials were involved in the decision to admit D. R. H. into the youth detention center; by law, such a decision is made by juvenile justice system officials, and any resulting absence from school is a collateral consequence. Juvenile justice officials

---

[43] OCGA § 20-2-736 (b).

[44] OCGA § 20-2-751.6.

[45] OCGA § 20-2-756.

23

could have placed D. R. H. in a private home; in that event, if left up to the school, it appears that D. R. H. would not have missed any days from school.

Accordingly, the disciplinary hearing was not untimely, as there was evidence that D. R. H. had not been suspended before the hearing,[46] and the superior court's determination to the contrary had no legal basis.[47] Accordingly, the superior court erred in reversing the State Board's decision and remanding the case to the State Board with direction to vacate the adjudication of expulsion entered against D. R. H.

4. Based on the foregoing, we need not reach the Local Board's contention that the superior court erred in failing to apply the "any evidence" standard of review.

*Judgment reversed. Ellington, P. J., and Branch, J., concur.*

---

[46] OCGA § 20-2-754 (b) (2).

[47] See OCGA §§ 20-2-730 et seq.; 15-11-1 et seq.