**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**September 15, 2014**

# In the Court of Appeals of Georgia

A14A1376. C. P. R. v. HENRY COUNTY BOARD OF EDUCATION.

BARNES, Presiding Judge.

Following a student disciplinary hearing, a hearing officer found that C. P. R., a student at Union Grove High School ("Union Grove") in Henry County, had violated three provisions of the student handbook based on evidence that he possessed two pills containing codeine that he attempted to sell to other students. In light of these violations, the hearing officer imposed long-term suspension on C. P. R. for the remainder of the school year, but ruled that C. P. R. could serve his suspension at an alternative high school operated by the county. The Henry County Board of Education (the "Henry County Board") thereafter entered a final decision adopting the findings and conclusions of the hearing officer. The State Board of Education (the "State Board") affirmed the Henry County Board's final decision, and the Superior Court of Henry County affirmed the State Board. This Court granted C.

P. R.'s application for discretionary appeal to review whether there was evidence to support the final decision reached by the Henry County Board, and affirmed by the State Board and superior court, that C. P.R. had violated the student handbook.[1] For the reasons discussed below, we conclude that there was sufficient evidence to support that determination and therefore affirm.

*The Public School Disciplinary Tribunal Act.* "In enacting the Public School Disciplinary Tribunal Act, OCGA § 20-2-750 et seq., the Georgia General Assembly recognized that local boards properly may limit students' access to education in response to disciplinary infractions" and devised a procedural framework for the imposition of suspension or expulsion. *D. B. v. Clarke County Bd. of Ed.*, 220 Ga. App. 330, 332 (1) (469 SE2d 438) (1996). The Act provides that "local boards of education shall appoint a disciplinary hearing officer, panel, or tribunal of school officials to hold a disciplinary hearing following any instance of an alleged violation of the student code of conduct where the principal recommends a suspension or expulsion of longer than ten school days[.]" OCGA § 20-2-753 (a). See *D. R. H.*, 325

---

[1] Although the term of C. P. R.'s suspension has now expired, the issue whether he violated the student handbook, and thus whether the infraction should remain on his school disciplinary record, is not moot. See *Fulton County Bd. of Ed. v. D. R. H.*, 325 Ga. App. 53, 60-61 (2) (752 SE2d 103) (2013).

2

Ga. App. at 62 (3). At the disciplinary hearing, all parties have the right to be represented by counsel, OCGA § 20-2-754 (b) (1), and all parties must be "afforded an opportunity to present and respond to evidence and to examine and cross-examine witnesses on all issues unresolved." OCGA § 20-2-754 (b) (3). Additionally, among other requirements, the proceedings must be transcribed or recorded and made available to all parties. OCGA § 20-2-754 (b) (5).

After receiving all of the evidence, the appointed disciplinary officer, panel, or tribunal "shall determine what, if any, disciplinary action shall be taken" against the student, which "may include, but is not limited to, expulsion, long-term suspension, or short-term suspension." OCGA § 20-2-755. A party may then request that the determination be reviewed by the local board of education, which is charged with reviewing the record from the disciplinary hearing and rendering a "final" decision regarding whether and to what extent a student should be disciplined. OCGA § 20-2-754 (d). See also OCGA § 20-2-755 (noting that a local board may modify any action taken by the appointed hearing officer, panel, or tribunal).

Pursuant to OCGA § 20-2-754 (a), the Public School Disciplinary Tribunal Act incorporates the terms of OCGA § 20-2-1160, which authorizes every local board of education to serve as "a tribunal for hearing and determining any matter of local

3

controversy in reference to the construction and administration of the school law" (subsection (a)) and sets forth the rules and procedures for appealing a final decision reached by a local board (subsections (b) - (e)). Specifically, OCGA § 20-2-1160 (b) provides that "[a]ny party aggrieved by a decision of the local board rendered on a contested issue after a hearing shall have the right to appeal therefrom to the State Board of Education," and OCGA § 20-2-1160 (c) provides that a party can appeal from the decision reached by the State Board "to the superior court of the county wherein the local board of education is situated." The appellate review of the local board's final decision conducted by the State Board and the superior court is not "de novo" and "shall be confined to the record" that was before the local board. OCGA § 20-2-1160 (e).

An appeal to this Court from the decision of the superior court is by application for discretionary appeal, as provided for by OCGA § 5-6-35 (a) (1). See *Clayton County Bd. of Ed. v. Wilmer*, 325 Ga. App. 637, 640 (753 SE2d 459) (2014). If this Court grants the application, we then review the record from the disciplinary hearing in the light most favorable to the local board's decision. *Chatooga County Bd. of Ed. v. Searels*, 302 Ga. App. 731, 732 (691 SE2d 629) (2010).

With this framework in mind, we turn to the record in the present case.

4

*Factual Background.* The record reflects that during the 2012-2013 school year, C. P. R. was a nineteen-year-old senior at Union Grove. On March 6, 2013, two assistant principals at Union Grove called C. P. R. to the school office and spoke with him after receiving a tip that he had been attempting to sell pills at school. When initially asked by the assistant principals if he had any pills or other contraband on him, C. P. R. replied, "No." One of the assistant principals then searched C. P. R. and his book bag. While searching C. P. R., the assistant principal found two white pills loose in the pocket of his gym shorts underneath his sweat pants. The pills were Tylenol 3, which contains codeine, a Schedule II controlled substance. See OCGA § 16-13-26 (1) (A) (vii).

The assistant principals asked C. P. R. to explain why he was carrying the loose pills, and C. P. R. said that he was scheduled to have his wisdom teeth removed later that day and had a prescription. Upon further inquiry, however, C. P. R. admitted that he intended to sell the pills and had asked other students if they wanted to purchase them. C. P. R. said that he had not planned to carry out the sales at school, but rather on the school bus or in his neighborhood later that day. C. P. R. expressed remorse for his actions.

After the assistant principals interviewed and searched C. P. R. in the school office, a police officer assigned to work at Union Grove as a school resource officer conducted a separate interview with C. P. R. after advising him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). The officer was able to identify the pills as Tylenol 3 with codeine and questioned C. P. R. after he waived his *Miranda* rights. C. P. R. admitted that he had intended to sell the pills to students. According to C. P. R., his plan was to carry out the sales after school.

After speaking with C. P. R., the assistant principals and the school resource officer interviewed another student, F. R., who had ridden on the school bus with C. P. R. that morning and would sometimes "hang out" with him. F. R. provided a written statement in which he stated that while riding on the bus, C. P. R. had offered to sell him two codeine pills for $2.00 apiece. F. R. stated that when he declined to buy the pills, C. P. R. asked him if he knew of any other students who might be interested in purchasing them.

The assistant principals later interviewed two more students, J. M. and A. P., about C. P. R.'s attempts to sell pills to students. C. P. R. and J. M. were friends and rode the bus together. J. M. provided a written statement to the assistant principals in which he stated that while riding on the bus on the morning in question, C. P. R. had

6

handed some pills to F. R., and F. R. had handed the pills back to C. P. R. J. M. further stated that before exiting from the bus, C. P. R. had accidentally dropped several pills on his seat but had been able to pick them up before going into school. According to J. M., C. P. R. had dropped approximately 5 white, round pills.

A. P. also provided a written statement to the assistant principals. A. P. stated that C. P. R. had approached him in the hallway at school and offered to sell some pills to him, but he had declined the offer. A. P. further stated that later that morning at school, C. P. R. had approached him again and offered to sell him three pills for $5.00, but he still had declined to purchase them.

In addition to interviewing the students, the assistant principals were able to obtain a video recording from the bus for the morning of the incident. In the bus video, consistent with the students' written statements, C. P. R. can be seen handing something to F. R., who talks with C. P. R. before handing it back to him. Later in the bus video, consistent with what J. M. said in his written statement, C. P. R. can be seen accidentally dropping something on his bus seat and then retrieving it before exiting from the bus.

Based on C. P. R.'s interview statements, the written statements of the other students, and the bus video, school administrators temporarily suspended C. P. R. and

charged him with three violations of the 2012-2013 Henry County Schools Student and Parent Handbook (the "Student Handbook"): possession of a drug (Section 2, Rule 6); selling of a drug (Section 3, Rule 5); and the commission of an act that constitutes a felony under Georgia law (Section 3, Rule 6). The Student Handbook authorized school administrators to take disciplinary action for violations that occurred, among other places, "[o]n school grounds" and "on the bus."

Copies of the School Handbook had been distributed to Union Grove students at the beginning of the school year. C. P. R.'s mother signed an acknowledgment form stating that she had reviewed the Student Handbook and discussed its requirements with C. P. R., including the student code of conduct and disciplinary procedures.

Separately, C. P. R. was arrested and charged with possession of a controlled substance with intent to distribute it within 1,000 feet of a public school. See OCGA § 16-13-32.4 (a). That offense is a felony under Georgia law. See OCGA § 16-13-32.4 (b).

*The Student Disciplinary Hearing.* C. P. R.'s student disciplinary hearing was conducted on March 15, 2013 at Union Grove before a hearing officer appointed by the Henry County Board. C. P. R., his mother, and his attorney attended the hearing.

8

Union Grove did not have legal representation at the hearing; rather, the designated school representative and prosecuting officer was one of the two assistant principals who had participated in the investigation of the case.

The assistant principal serving as the designated school representative testified, as did the other assistant principal and the school resource officer, to the events as previously summarized. The bus video also was introduced into the record and played for the hearing officer. Additionally, the three students who had been interviewed about C. P. R.'s attempted sale of the pills (F. R., A. P., and J. M.) testified at the hearing, where for the first time F. R. and A. P. recanted their prior written statements, and J. M. recanted the portion of his prior written statement in which he said that C. P. R. had approximately five pills on the bus. The school introduced into the record the prior written statements of the three students that contradicted their testimony at the hearing. C. P. R. elected not to testify, but his attorney called his mother as a witness, who testified that C. P. R. had been prescribed the codeine pills for dental pain and that he had been scheduled to have dental surgery on the afternoon of March 6, the day of the alleged attempted sale of the pills.

At the conclusion of the disciplinary hearing, the hearing officer found that C. P. R. had violated the three provisions of the Student Handbook with which he had

been charged. The hearing officer ruled that C. P. R. would be suspended for the rest of the school year but could serve his suspension at an alternative school maintained by the school district.

C. P. R. appealed the hearing officer's ruling to the Henry County Board. The Henry County Board reviewed the record from the hearing and adopted the hearing officer's ruling in a final decision issued on April 10, 2013.

*Subsequent Proceedings.* C. P. R. appealed the decision of the Henry County Board to the State Board, which affirmed. He then appealed to the Superior Court of Henry County, which affirmed the State Board. C. P.R. thereafter filed an application for interlocutory review with this Court, which we granted. This appeal followed.

1. Before turning to C. P. R.'s specific enumerations of error, we first address what standard of review should apply in this case. "Not unlike the State Board and the superior court, this Court as an appellate body applies the 'any evidence' standard of review to the record supporting the initial decision of the [l]ocal [b]oard." *Searels*, 302 Ga. App. at 732. See OCGA § 20-2-1160 (e); *D. R. H.*, 325 Ga. App. at 58 (1); *King v. Worth County Bd. of Ed.*, 324 Ga. App. 208 (749 SE2d 791) (2013). "Our review is deferential because states and local authorities have a compelling, legitimate interest and broad discretion in the management of school affairs." (Citation and

10

punctuation omitted.) *King*, 324 Ga. App. at 208. Hence, "[c]ourts are reluctant to substitute their judgment for that of a school board where its exercise of judgment does not violate the law. We presume that the actions of the board are not arbitrary and capricious, but are reasonable unless there is clear evidence to the contrary." *Brawner v. Marietta City Bd. of Ed.*, 285 Ga. App. 10, 15 (646 SE2d 89) (2007). See *King*, 324 Ga. App. at 208.

C. P. R., however, argues that the Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq. (the "APA"), provides the proper framework for reviewing the decision of the Henry County Board. See OCGA § 50-13-19 (h) (1) - (6) (setting forth bases upon which the final decision of administrative agency can be reversed or modified by the superior courts); *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160-161 (3) (664 SE2d 223) (2008) (discussing APA framework). We disagree. Under the APA, a person who has exhausted all administrative remedies and who is aggrieved by a final decision of an agency in a contested case may petition for judicial review in the superior court, and may then seek judicial review of the superior court's decision. See OCGA §§ 50-13-2 (1), (2); 50-13-19 (a); *Atmos Energy Corp. v. Ga. Public Svc. Comm.*, 290 Ga. App. 243, 245 (1) (659 SE2d 385) (2008), aff'd, 285 Ga. 133 (674 SE2d 312) (2009). But it is well established that appeals from final

decisions reached by local boards of education do not fall within the APA because local boards are "not included within any of the definitions of 'agency' contained in the statute." *Lansford v. Cook*, 252 Ga. 414, 415-416 (314 SE2d 103) (1984). See OCGA § 50-13-2 (1);[2] *Rabon v. Bryan County Bd. of Ed.*, 173 Ga. App. 507 (1) (326 SE2d 577) (1985); *Hood v. Rice*, 120 Ga. App. 691, 694 (5) (a) (172 SE2d 170)

---

[2] The APA defines "agency" as
each state board, bureau, commission, department, activity, or officer authorized by law expressly to make rules and regulations or to determine contested cases, except the General Assembly; the judiciary; the Governor; the State Board of Pardons and Paroles; the State Financing and Investment Commission; the State Properties Commission; the Board of Bar Examiners; the Board of Corrections and its penal institutions; the State Board of Workers' Compensation; all public authorities except as otherwise expressly provided by law; the State Personnel Board; the Department of Administrative Services or commissioner of administrative services; the Technical College System of Georgia; the Department of Revenue when conducting hearings relating to alcoholic beverages, tobacco, or bona fide coin operated amusement machines or any violations relating thereto; the Georgia Tobacco Community Development Board; the Georgia Higher Education Savings Plan; any school, college, hospital, or other such educational, eleemosynary, or charitable institution; or any agency when its action is concerned with the military or naval affairs of this state. The term "agency" shall include the State Board of Education and Department of Education, subject to [certain] qualifications . . . .
OCGA § 50-13-2 (1).

(1969).[3] Thus, student disciplinary appeals are governed by the Public School Disciplinary Tribunal Act and OCGA § 20-2-1160 rather than the APA.

It is true, as C. P. R. emphasizes, that the General Assembly amended the APA in 1990 to expressly state that the State Board fell within the statutory definition of an "agency." See OCGA § 50-13-2 (1); Ga. L. 1990, p. 794, § 1.[4] However, the amendment is immaterial to the present case because the 1990 amendment did not include *local boards* within the amended definition of "agency," and we must presume that the General Assembly's decision to include the State Board but not local boards within that definition "was a matter of considered choice." (Citation and punctuation omitted.) *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga. App. 307, 311 (1) (b) (704 SE2d 823) (2010) (in light of the legislature's inclusion of language limiting who could sign an instrument on behalf of a corporation in one subsection of a statute, the absence of similar limiting language

---

[3] While many of the appeals in this area concern teacher employment issues decided by local boards of education, both school employment appeals and student disciplinary appeals are governed by the same statute, OCGA § 20-2-1160. See OCGA §§ 20-2-754 (a); 20-2-940 (f).

[4] Even before the 1990 amendment, this Court had construed the APA as including the State Board within the statutory definition of "agency." See *Dept. of Ed. v. Kitchens*, 193 Ga. App. 229, 232 (2) (387 SE2d 579) (1989).

in another statutory subsection would be presumed to be a matter of considered choice by the legislature).

Indeed, we held in a decision rendered after the 1990 amendment that the APA does not govern appeals from a final decision reached by a local school board. See *Johnson v. Pulaski County Bd. of Ed.*, 231 Ga. App. 576, 577 (1) (499 SE2d 345) (1998). This is because it is the local board that makes the final decision in a student disciplinary case, see OCGA § 20-2-754 (d), and the State Board only acts as an appellate body to review that final decision under the "any evidence" standard based solely on the record that was before the local board. See OCGA § 20-2-1160 (e); *D. R. H.*, 325 Ga. App. at 57-58 (1); *King*, 324 Ga. App. at 208. "Our decision here need go no further than to point out that the [APA] does not apply to the State Board . . . where, as here, the board sat as an appellate body and did not decide the controversy de novo but based its appellate decision on the evidence heard by the local board." (Citation and punctuation omitted.) *Palmer v. State Bd. of Ed.*, 143 Ga. App. 315 (238 SE2d 255) (1977). See *Hood*, 120 Ga. App. at 694 (5) (b). C. P. R.'s reliance on the APA's framework for judicial review therefore is misplaced.[5]

---

[5] There are other contexts where the State Board is not acting merely as an appellate body and is governed by the APA. See, e. g., *Kitchens*, 193 Ga. App. at 232 (2) (State Board required to follow procedures mandated by APA in promulgating

Lastly, C. P. R. relies upon our recent decision in *D. R. H.*, 325 Ga. App. at 59 (2) to argue that the Henry County Board's determination that he violated the Student Handbook was an erroneous conclusion of law that should be reviewed de novo. *D. R. H.* is clearly distinguishable and has no bearing on the present case. In *D. R. H.*, we concluded that the issue whether the student's disciplinary appeal was moot was a legal question that we would review de novo. Id. In contrast, the issue in the present case is whether C. P. R. violated the Student Handbook, a quintessentially factual question that we must review under the "any evidence" standard, construing the record in the light most favorable to the Henry County Board's decision, and affording the Henry County Board broad discretion in its determination regarding whether and to what extent a student should be subject to discipline. See OCGA § 20-2-1160 (e); *King*, 324 Ga. App. at 208; *Searels*, 302 Ga. App. at 732.

2. C. P. R. contends that there was no evidence to support the conclusion reached by the Henry County Board, and affirmed by the State Board and superior court, that he violated Section 2, Rule 6 of the Student Handbook, which prohibits students from possessing "any drug." According to C. P. R., the evidence failed to show that he violated this provision because it was undisputed that he had a

_____

teacher certification regulations).

15

prescription for the codeine pills and thus was not in possession of a "drug." We are unpersuaded.

Significantly, the Student Handbook does not limit the definition of "drug" to substances that are illegal under Georgia criminal law; rather, Section 2, Rule 6 prohibits students from "[p]ossessing any drug *or* unlawful substance." (Emphasis supplied.) Moreover, the Student Handbook in a section entitled "Medicine" provides in relevant part:

**Medicine**

When students must take medication at school, parents should bring medicine and related equipment to the principal or his/her designee and complete a Medical Authorization Form. Medicine cannot be given without written permission and instructions from the parent. **Please do not send medicine to school by students.**

**All prescription and over-the-counter medication must be kept in the school office unless approved by the principal.** Students are subject to disciplinary action, including but not limited to short-term suspension, long-term suspension, or expulsion, if they possess medicine at school without the principal's consent, distribute the medicine to other students, or use the medicine in a manner that is not prescribed. . . . Read together, these provisions of the Student Handbook reflect that any substance used as a medicine is a "drug" that cannot be

16

possessed by a student at school unless advance permission is obtained from the principal.[6]

Based on the evidence previously summarized, construed in the light most favorable to the Henry County Board with all inferences drawn in its favor, there clearly was evidence that C. P. R. had codeine pills on his person at school without obtaining advance permission from the principal. Indeed, C. P. R. does not dispute that "he failed to follow the administrative procedure for bringing and taking prescription medication at school." Accordingly, there was sufficient evidence to support a finding that C. P. R. was in possession of a "drug" in violation of Section 2, Rule 6 of the Student Handbook.

3. C. P. R. further contends that there was insufficient evidence to support the conclusion reached by the Henry County Board, and affirmed by the State Board and

---

[6] As the Supreme Court of the United States has explained,
standards of conduct for schools are for school administrators to determine without second-guessing by courts lacking the experience to appreciate what may be needed. . . . There is no need . . . to explain the imperative of keeping drugs out of schools, or to explain the reasons for the school's rule banning all drugs, no matter how benign, without advance permission. Teachers are not pharmacologists trained to identify pills and powders, and an effective drug ban has to be enforceable fast.
*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 372 (III) (A), n.1 (129 SCt 2633, 174 LE2d 354) (2009).

17

superior court, that he violated Section 3, Rule 5 of the Student Handbook, which prohibits students from

> [u]sing, selling, buying, giving away, bartering, exchanging, receiving, or being under the influence of any drug or substance declared unlawful, any substance or chemical that is mood altering when taken, or any substance represented to be a drug or unlawful substance or admits to the use of any substances represented to be a drug prior to attending school or a school-related activity; or, possessing any drug paraphernalia. According to C. P. R., there was insufficient evidence that he sold or attempted to sell the codeine pills to other students, and thus insufficient evidence that he violated Section 3, Rule 5. Again, we are unpersuaded.

The two assistance principals testified that C. P. R. confessed to them that he intended to sell the codeine pills and had asked other students if they wanted to purchase them, and the school resource officer likewise testified that C. P. R. admitted that he had intended to sell the pills to students. The school also introduced into evidence the written statement of F. R. in which he stated that C. P. R. offered to sell him the pills on the school bus; the written statement of A. P. in which he stated that C. P. R. had twice attempted to sell the pills to him in the school; and the written statement of J. M. in which he stated that he saw C. P. R. hand the pills to F. R. in the school bus, F. R. return the pills to C. P. R., and C. P. R. accidentally drop

18

and then retrieve approximately five pills when exiting from the bus. This evidence, combined with the bus video footage corroborating the students' written statements, was more that sufficient to support a finding that C. P. R. had violated Section 3, Rule 5 of the Student Handbook.

C. P. R. argues, however, that the evidence was insufficient because the assistant principals and school resource officer were uncertain of the "specific language" used by him during his confession, and because school administrators failed to conduct a "thorough investigation" before deciding to charge him with violating the Student Handbook. C. P. R. further challenges the sufficiency of the evidence on the ground that the three students who wrote statements recanted them in whole or in part at the hearing.[7]

---

[7] Embedded in this enumeration of error, C. P. R. also argues that the disciplinary hearing officer abused its discretion in denying his request to sequester the assistant principal who was the prosecuting officer for Union Grove. Specifically, C. P. R. contends that the assistant principal should not have been allowed to remain in the hearing room during the testimony of the student witnesses, and that the hearing officer should have replaced the assistant principal with other school personnel during the students' questioning, given that the principal was himself a witness at the hearing and had been involved in the initial interviews of the students when they wrote out their statements inculpating C. P. R.

As an initial matter, "a party cannot expand its enumerations of error through argument or citation in its brief." *Stockbridge Dental Group, P.C. v. Freeman*, 316 Ga. App. 274, 275, n. 2 (728 SE2d 871) (2012). In any event, the record reflects that Union Grove did not have legal representation at the discipline hearing, which is less

19

C. P. R.'s arguments notwithstanding, any uncertainty expressed by the two assistant principals and school resource officer regarding the exact wording of C. P. R.'s confession, and any questions regarding the adequacy of their investigation, went to the weight of their testimony, not its admissibility. And it was the role of the Henry County Board, not this Court, "to weigh the evidence and determine the credibility of the witnesses." *Searels*, 302 Ga. App. at 733. Furthermore, the fact that the student witnesses recanted their prior written statements at the disciplinary hearing is immaterial for purposes of assessing the sufficiency of the evidence, because their written statements provided to school administrators were admissible as substantive evidence. See *Lambert v. State*, 325 Ga. App. 603, 606 (2) (754 SE2d 392) (2014) (pointing out that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence." (citation and punctuation omitted); *In the Interest of M. D. L.*, 271 Ga. App. 738, 740 (1) (b) (610

formal than a criminal or civil trial. See generally *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (II) (A) (2) (a) (11th Cir. 1987) (drawing distinction between the academic disciplinary process and criminal and civil trials). Rather, the assistant principal was the sole representative of Union Grove and was responsible for serving as its chief prosecuting officer to establish its allegations against C. P. R. at the hearing. In this context, the presence of the assistant principal was "essential to the presentation of [Union Grove's] cause," and, therefore, he was exempted from the rule of sequestration. See OCGA § 24-6-615 (3).

20

SE2d 687) (2005) ("The fact that [several witnesses] attempted to recant their . . . testimony at trial is irrelevant because their written statements to police provided the necessary evidence, and in Georgia, a prior inconsistent statement of a witness subject to cross-examination is admissible as substantive evidence.").

Additionally, C. P. R. argues that the school administrators made an audio recording of his confession to them, but failed to produce it and introduce it into evidence at the hearing or provide an explanation for why it was not entered into evidence. Consequently, C. P. R. argues that he was entitled to a rebuttable presumption that the audio recording was unfavorable to Union Grove under OCGA § 24-14-22. That statute provides:

> If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.

C. P. R., however, has failed to show that he raised the issue of the presumption in the disciplinary hearing or elicited a ruling from the hearing officer or the Henry County Board, which would have determined in the first instance if there was a basis

21

for imposing the presumption. Accordingly, he has waived the issue for purposes of appeal. See *Kelley v. Blue Line Carriers, LLC*, 300 Ga. App. 577, 580 (1) (685 SE2d 479) (2009). In any event, even if the presumption were to apply with respect to what was contained on the audio recording (which we need not determine),[8] the testimony of the two assistant principals and the school resource officer, combined with the written statements of the other students and the bus video, clearly would have been sufficient to allow the fact finder to conclude that the presumption had been rebutted.

For these combined reasons, C. P. R.'s challenge to the sufficiency of the evidence is without merit. The Henry County Board was authorized to determine that C. P. R. violated Section 2, Rule 5 of the Student Handbook, and the State Board and superior court properly affirmed that determination.

4. Finally, C. P. R. contends that there was insufficient evidence to support the conclusion reached by the Henry County Board, and affirmed by the State Board and superior court, that he violated Section 3, Rule 6 of the Student Handbook, which prohibits students from committing any act that constitutes a felony under Georgia law. We disagree because there was evidence that C. P. R. committed the felony

---

[8] Although somewhat unclear, it appears from the record that only the interview conducted by the school resource officer was recorded.

22

offense of possession of a controlled substance with intent to distribute it within 1,000 feet of a public school.

> Pursuant to OCGA § 16-13-32.4 (a), it is
>
> unlawful for any person to . . . possess with intent to distribute a controlled substance or marijuana in, on, or within 1,000 feet of any real property owned by or leased to any public or private elementary school, secondary school, or school board used for elementary or secondary education.

As previously noted, codeine is a Schedule II controlled substance. See OCGA § 16-13-26 (1) (A) (vii). Furthermore, even if a defendant has a valid prescription for the controlled substance, he can still be found guilty under OCGA § 16-13-32.4 (a) if he possesses the controlled substance *with the intent to distribute it*. See *Atkinson v. State*, 280 Ga. App. 635, 637 (634 SE2d 828) (2006). Here, the evidence as previously discussed – particularly the written statement of A. P. in which he stated that C. P. R. had twice attempted to sell the pills to him on school grounds – was sufficient to authorize a finding that C. P. R. possessed pills containing codeine with the intent to distribute them within 1,000 feet of a public school, and thus committed an act constituting a felony under Georgia law.

C. P. R. argues that the State Board and superior court should have reversed the Henry County Board's finding that he committed an act constituting a felony because subsequent to the disciplinary hearing, a Henry County grand jury returned a "no bill" to his indictment on that felony charge. But the "no bill" was not part of the disciplinary hearing record and thus could not be considered by the State Board or superior court. See OCGA § 20-2-1160 (e) (providing that "the review by the state board or the superior court shall be confined to the record"); *D. R. H.*, 325 Ga. App. at 58 (1) (superior court erred in considering materials that were not part of the record from the disciplinary hearing and issues that were not raised before the local board). In any event, the record of a "no bill" or of an acquittal in a criminal prosecution would serve as no bar to a student disciplinary proceeding, given that criminal proceedings have a more stringent burden of proof. See, e.g., *McGuire v. Witcher*, 201 Ga. App. 685, 686 (411 SE2d 875) (1991) (noting that results from a criminal proceeding generally does not have a preclusive effect in other types of actions, given that "the weight of evidence required for a finding are different"). Consequently, C. P. R.'s argument lacks merit, and there was sufficient evidence to find that he violated Section 3, Rule 6 of the Student Handbook.

*Judgment affirmed. Boggs and Branch, JJ., concur.*

24