**FIRST DIVISION**
**BROWN, C.J.**
**BARNES, P. J. and DILLARD, P.J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 11, 2026**

# In the Court of Appeals of Georgia

A25A1870. K. B. v. COBB COUNTY SCHOOL DISTRICT.

DILLARD, Presiding Judge.

K. B.—a student in the Cobb County School District—appeals a superior court order reversing a decision of the State Board of Education and reinstating a decision of the Cobb County School Board[1] that suspended him for nearly two years for off-campus conduct violating the Local Board's code of conduct.[2] More precisely, K. B. argues (1) the Local Board exceeded its statutory authority by suspending him for off-

---

[1] For the sake of clarity, we refer to the Cobb County School District as the "District," the State Board of Education as the "State Board," and the Cobb County School Board as the "Local Board."

[2] Oral argument was held on September 10, 2025, and is archived on the Court of Appeals of the State of Georgia's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A25A1870 (Sep. 10, 2025), available at https://vimeo.com/1118759116

campus conduct that was not criminally chargeable as a felony; (2) the superior court erred in failing to consider if the Local Board exceeded that authority in suspending him; and (3) the superior court erred in finding the District had standing to appeal the State Board's decision. For the following reasons, we vacate the superior court's order and remand for proceedings consistent with this opinion.

The Georgia General Assembly has provided for the establishment of "student disciplinary standards by local boards of education, as well as procedures for imposing suspension or expulsion upon a finding that a student has violated those standards after a disciplinary officer or a tribunal has conducted an evidentiary hearing."[3] Importantly, on appeal of a student-disciplinary decision, we review whether "the record supports the initial decision of the local school board,"[4] and apply the "any evidence standard of review to the local board's decision as to any factual issue."[5]

---

[3] *Henry County Bd. of Educ. v. S. G.*, 301 Ga. 794, 798(2) (804 SE2d 427) (2017). See OCGA § 20-2-750 *et seq*.

[4] *S. G.*, 301 Ga. at 798(2). See *C. P. R. v. Henry County Bd. of Educ.*, 329 Ga. App. 57, 62(1) (763 SE2d 725) (2014) (noting that appellate courts apply a deferential standard when reviewing the initial decision of a local school board).

[5] *S. G.*, 301 Ga. at 798(2). See *C. P. R.*, 329 Ga. App. at 62(1) ("Not unlike the State Board and the superior court, this Court as an appellate body applies the 'any evidence' standard of review to the record supporting the initial decision of the local

This is because it is up to the local board of education to "weigh the evidence and determine the credibility of witnesses, and not the appellate court."[6] That said, even in matters involving the decisions of local school boards, our review as to conclusions of law is *de novo*.[7]

With the foregoing in mind, the record shows that in August 2023, K. B. was a sophomore at North Cobb High School ("NCHS")—a school within the District. On the morning of August 25, 2023, Officer Nina Daniels, NCHS's resource officer, and Assistant Principal Matt Williams were monitoring traffic entering and exiting the school parking lot when they witnessed a Dodge Charger—which they knew to be K. B.'s vehicle—speeding, revving its engine, and spinning its tires as it drove by the street in front of the school in heavy traffic. Because of his age, K. B. was not allowed to park in the school parking lot, but his family made arrangements for him to do so in the lot of a barbershop just a few blocks away from school. Aware of this

---

board." (punctuation omitted)).

[6] *S. G.*, 301 Ga. at 798(2)

[7] See *Fulton County Bd. of Educ. v. D. R. H.*, 325 Ga. App. 53, 59(2) (752 SE2d 103) (2013); see also *S. G.*, 301 Ga. at 798(1) (noting that a local board's misapplication of the relevant law would amount to an abuse of discretion and should be reversed on appeal).

arrangement and wanting to speak with K. B. about his driving, Daniels and Williams got into Daniels's marked police vehicle and followed K. B. to the barber shop.

Upon arriving, Daniels and Williams saw K. B.'s vehicle backed into a parking space. Daniels activated her police vehicle's blue lights and parked at an angle in front of K. B.'s car, although not entirely blocking it. Daniels and Williams then exited the vehicle, and as Daniels approached K. B.'s car, she motioned for him to roll down the window. But rather than complying, K. B. shook his head "no" and wagged his finger. Daniels repeated her motion for K. B. to roll down his window, but he again shook his head "no" and wagged his finger before re-starting the vehicle. At that point, K. B. began pulling out of the parking space, angling his vehicle around the police car, but he brushed up against Daniels, who pushed off his vehicle to avoid being directly struck and seriously injured. K. B. then fled the scene, but he later returned to school on foot, where Daniels, Williams, and the school principal confronted him about the incident.

Daniels immediately recommended that the district attorney charge K. B. with aggravated assault, obstruction, reckless driving, and violation of an instruction permit. In addition, NCHS suspended K. B. for ten days; and a few days later, the

school notified K. B. and his parents in writing that he was being charged with violating Section II, Paragraph N of the Local Board's Code of Conduct regarding "Off-Campus Offenses," which at the time of the incident provided:

> Off-campus misconduct for which a student shall be disciplined *includes, but is not limited to*, any off-campus conduct that: Could result in the student being criminally charged with a felony and is prohibited by the Georgia or United States criminal codes or would be *punishable as a felony if committed by an adult*; **AND** [m]akes the student's continued presence at school a potential danger to persons or property at the school or disrupts the educational process.[8]

Specifically, the letter noted that K. B. was "being charged with aggravated assault, which is a felony[,]" with a recommendation of suspension for the remainder of the 2023-2024 school year and the entire 2024-2025 school year, but advised that he could apply to the Alternative Education Program. This correspondence also notified K. B. and his parents that a disciplinary hearing before a hearing officer with the Local Board had been scheduled should they want to challenge the suspension.

On November 27, 2023, a hearing officer appointed by the Local Board conducted a disciplinary hearing on the charge that K. B. violated Paragraph N of the

---

[8] (Emphasis added).

Board's Code of Conduct. Both parties were represented by counsel; and during the hearing, Daniels and Williams testified about the incident—including K. B.'s refusal to comply with Daniels's orders and his vehicle making contact with Daniels as he fled the scene. In his defense, K. B. offered the testimony of a barbershop employee and a sworn statement from another employee, both of whom witnessed the incident but did not see K. B.'s vehicle strike Daniels. K. B. also testified and claimed that after parking, he looked up to see Daniels approaching with her hand on a firearm, and that he did not comply with her order because he was scared. He further claimed that this same fear was why he left the parking lot; but he denied striking Daniels with his vehicle.

At the conclusion of the disciplinary hearing, the hearing officer determined that K. B.'s actions violated Paragraph N of the Local Board's Code of Conduct; and after hearing additional testimony solely on the issue of punishment, he agreed with NCHS's recommendation that K. B. receive a suspension for the remainder of the 2023-2024 school year and the entire 2024-2025 school year. K. B. later sought review of the hearing officer's decision with the Local Board; but on January 19, 2024, the

Local Board informed K. B. in writing that it affirmed the hearing officer's decision and he had a right to appeal it to the State Board.

Meanwhile, one week after the hearing officer's ruling (but before the Local Board's review), the juvenile court—based on a recommendation from the district attorney—dismissed the charges against K. B. stemming from the incident, finding that the State would be unable to prove aggravated assault beyond a reasonable doubt. Several months later, K. B. appealed to the State Board, arguing, *inter alia*, that Paragraph N exceeded the legal authority granted by statute to the Local Board to discipline students for off-campus conduct. And shortly after that, the Local Board filed a response brief.

On July 17, 2024, the State Board reversed the decision of the Local Board, concluding the Local Board's rule about off-campus conduct exceeded the authority granted to it by OCGA § 20-2-751.5(c), which provides:

> Each student code of conduct shall also contain provisions that address any off-campus behavior of a student which could result in the student being criminally charged with a felony and which makes the student's continued presence at school a potential danger to persons or property at the school or which disrupts the educational process.

Significantly, the State Board found that Paragraph N was impermissibly vague and overly broad in that it allowed the Local Board to discipline students for off-campus conduct that could *not* be criminally charged as a felony. The State Board also included a "Notice of Right to Appeal" in its ruling, which explained that "[a]ny party aggrieved by a decision of the [State Board] has the right to appeal that decision to the Superior Court . . . as provided by [statute]."

Later on, the District—as opposed to the Local Board—filed a petition with the Superior Court of Cobb County, seeking review of the State Board's decision. Simultaneously, the District filed an emergency motion to stay the State Board's decision, which K. B. immediately opposed. But on August 12, 2024, the superior court granted the stay, thus preventing K. B. from returning to NCHS for the new school year. Both parties then filed merits briefs with the superior court, which conducted a hearing on February 12, 2025. At the conclusion of the hearing, the superior court took the matter under advisement; but one week later, it issued an order reversing the State Board's ruling and affirming the decision of the Local Board.

K. B. then filed an application for discretionary appeal,[9] which we granted. This appeal follows.

1. In his third enumeration of error (which we address first), K. B. contends the superior court erred in failing to dismiss the District's petition for lack of standing, arguing the District is not an aggrieved party with a right to appeal under OCGA § 20-2-1160 (c). We disagree.

Standing is one of several doctrines of justiciability, which are "crucial limitations on the judicial power (be it state or federal)."[10] It is inextricably intertwined with separation of powers, and limits "the power of the judiciary" and helps "define the judicial role . . . ."[11] More precisely, standing is the "determination of whether a specific person is the proper party to bring a particular matter to a . . .

---

[9] See OCGA § 5-6-35 (a) (1) ("Appeals from decisions of the superior courts reviewing decisions of ... the State Board of Education [shall be taken] by petition for review . . . .").

[10] *Sons of Confederate Veterans v. Newton County Bd. of Commrs.*, 368 Ga. App. 511, 518–19 (890 SE2d 468) (2023) (Dillard, P.J., concurring dubitante).

[11] Erwin Chemerinsky, Federal Jurisdiction § 2.1, p. 43 (2nd ed. 1994); see also *Parker v. Leeuwenburg*, 300 Ga. 789, 793 (797 SE2d 908) (2017) (Peterson, J., dissenting) (noting that "[a] robust standing doctrine is necessary to ensure that courts remain the least dangerous branch of government . . . .").

court for adjudication."[12] Put another way, standing is a "jurisdictional prerequisite" to a party's "right to sue."[13] A party with standing, then, is "necessary to invoke a court's judicial power to resolve a dispute, and the power of Georgia courts—as with any power possessed by a branch of state government—is conferred by our state Constitution."[14] Indeed, from the earliest days of our Supreme Court, we have understood "the power of courts—the judicial power—to be limited to cases involving actual controversies, which requires a showing of some injury."[15]

---

[12] Chemerinsky, *supra* note 11, at § 2.3.1, p. 53; see also Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine?*, 102 Mich. L. Rev. 689, 694 (I)(B) (2004) (noting that "[t]he question of which parties may properly come to court to vindicate these different kinds of legal rights is central to the issue of standing").

[13] *Sons of Confederate Veterans v. Henry County Bd. of Comm'rs*, 315 Ga. 39, 44(2)(a) (880 SE2d 168) (2022); see also *Warth v. Seldin*, 422 U.S. 490, 498 (II) (95 SCt 2197, 45 LEd2d 343) (1975) (noting that the question of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

[14] *Sons of Confederate Veterans*, 315 Ga. at 44-45(2)(a). See Ga. Const. of 1983 Art. VI, Sec. I, Par. I ("The judicial power of the state shall be vested exclusively in the following classes of courts: magistrate courts, probate courts, juvenile courts, state courts, superior courts, state-wide business court, Georgia Tax Court, Court of Appeals, and Supreme Court . . . .").

[15] *Sons of Confederate Veterans*, 315 Ga. at 62(2)(c)(iii).

Turning to the statutes at issue, we begin our analysis with "familiar and binding canons of construction."[16] And in considering any statute's meaning, our charge is to "presume that the [legislature] meant what it said and said what it meant."[17] Toward that end, we must afford the statutory text its plain and ordinary meaning,[18] consider the text contextually,[19] read the text "in its most natural and

---

[16] *Holcomb v. Long*, 329 Ga. App. 515, 517(1) (765 SE2d 687) (2014). Accord *Flanders v. Jackson*, 344 Ga. App. 493, 495(1) (810 SE2d 656) (2018); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[17] *Deal v. Coleman*, 294 Ga. 170, 172(1)(a) (751 SE2d 337) (2013) (punctuation omitted). Accord *Flanders*, 344 Ga. App. at 495(1); *Holcomb*, 329 Ga. App. at 517(1); *Martinez v. State*, 325 Ga. App. 267, 273(2) (750 SE2d 504) (2013).

[18] *Deal*, 294 Ga. at 172(1)(a). Accord *Flanders*, 344 Ga. App. at 495–96(1); *Holcomb*, 329 Ga. App. at 517 (1). See also *Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558(1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text." (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839(1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)... ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning ... ." (punctuation omitted)).

[19] See *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 10(II)(B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172(1)(a) ("[W]e must view the statutory text in the context in which it appears[.]"); see also *Tibbles*, 297 Ga. at 558(1) ("The common and customary usages

11

reasonable way, as an ordinary speaker of the English language would,"[20] and seek to "avoid a construction that makes some language mere surplusage."[21] In sum, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[22]

Relevant here, OCGA § 20-2-1160(c) provides, in part, as follows:

> Where an appeal is taken to the state board, the state board shall notify the parties in writing of its decision within 25 days after hearing thereon and of their right to appeal the decision to the superior court of the county wherein the local board of education is located and shall clearly describe the procedure and requirements for such an appeal which are provided in this subsection and in subsection (d) of this Code section.

---

of the words are important, but so is their context." (punctuation and citation omitted)); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 107 (II)(C)(2) (7th Cir. 2013) (Manion, J.) (noting that in statutory construction cases, courts "begin with the language of the statute itself and the specific context in which that language is used." (punctuation and citation omitted)).

[20] *Deal*, 294 Ga. at 172-73(1)(a). Accord *Holcomb*, 329 Ga. App. at 518(1).

[21] *In the Interest of L.T.*, 325 Ga. App. at 592 (punctuation omitted). Accord *Holcomb*, 329 Ga. App. at 518(1).

[22] *Holcomb*, 329 Ga. App. at 518(1) (punctuation omitted). See also *Deal*, 294 Ga. at 173(1)(a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

*Any party aggrieved thereby may appeal to the superior court* of the county wherein the local board of education is situated.[23]

As noted above, K. B. argues the District is not an aggrieved party in this context. But the statute does not define "aggrieved party," and it is the principal of the student's school—rather than the local board—who initiates the disciplinary process on behalf of the school by recommending a significant suspension or expulsion of a student.[24] And while K. B. correctly points out that school districts are managed by local boards of education,[25] in a long line of cases (albeit in a somewhat different context), the Supreme Court of Georgia and this Court "have held that a county board of

---

[23] (Emphasis added).

[24] See OCGA § 20-2-753(a) ("In addition to any proceedings which are authorized in Code Section 20-2-752, local boards of education shall appoint a disciplinary hearing officer, panel, or tribunal of school officials to hold a disciplinary hearing following any instance of an alleged violation of the student code of conduct *where the principal recommends a suspension or expulsion of longer than ten school days* or an alleged assault or battery by a student upon any teacher or other school official or employee, if such teacher or other school official or employee so requests." (emphasis added)).

[25] See OCGA § 20-2-50 ("Each county of this state, exclusive of any independent school system in existence in a county, shall compose one school district and shall be confined to the control and management of a county board of education, except to the extent that area school systems are created pursuant to Article VIII, Section V, Paragraph I of the Constitution of Georgia.").

education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued."[26] Moreover, while a brief review of appellate authority reflects that the local board has been named as a party in appeals of student disciplinary cases,[27] naming the school district as a party in such cases is not without precedent.[28] Given the foregoing, we conclude the superior court did not err in finding the District was an aggrieved party and, thus, had standing.

2. In his second enumeration of error, K. B. argues the superior court erred in failing to consider whether the Local Board exceeded its statutory authority when it suspended him. We agree.

When it enacted "the Public School Disciplinary Tribunal Act," OCGA § 20-2-750 et seq., the Georgia General Assembly recognized that "local boards

---

[26] *Cook v. Colquitt County Bd. of Educ.*, 261 Ga. 841, 841 (412 SE2d 828) (1992). See, e.g., *Smith v. Maynard*, 214 Ga. 764, 769(2) (107 SE2d 815) (1959); *Parker v. Bd. of Educ. of Sumter County*, 209 Ga. 5(2) (70 SE2d 369) (1952); *Fann v. Johnson County Bd. of Educ.*, 270 Ga. App. 186, 187(1) (606 SE2d 110) (2004); *Foster v. Cobb County Bd. of Educ.*, 133 Ga. App. 768 (213 SE2d 38) (1975).

[27] See, e.g., *S. G.*, 301 Ga. at 798 (naming local board); *C. P. R.*, 329 Ga. App. at 57 (naming local board); *D. R. H.*, 325 Ga. App. at 53 (naming local board).

[28] See, e.g., *Fulton County Sch. Dist. v. S. C.*, 322 Ga. 234 (919 SE2d 98) (2025) (naming school district); *Hightower v. Muscogee County Sch. Dist.*, 180 Ga. App. 635 (350 SE2d 25) (1986) (naming school district).

properly may limit students' access to education in response to disciplinary infractions and devised a procedural framework for the imposition of suspension or expulsion."[29] As noted above, OCGA § 20-2-751.5(c) provides:

> Each student code of conduct shall also contain provisions that address any off-campus behavior of a student which could result in the student being criminally charged with a felony and which makes the student's continued presence at school a potential danger to persons or property at the school or which disrupts the educational process.

And again, the Local Board's rule pertaining to the same topic of off-campus offenses, Paragraph N, provided:

> Off-campus misconduct for which a student shall be disciplined *includes, but is not limited to*, any off-campus conduct that: Could result in the student being criminally charged with a felony and is prohibited by the Georgia or United States criminal codes or would be *punishable as a felony if committed by an adult*; **AND** [m]akes the student's continued

---

[29] *C. P. R.*, 329 Ga. App. at 58 (quotation marks omitted). See *S. G.*, 301 Ga. at 798(2) (explaining that, via OCGA § 20-2-750 et seq., the "legislature has provided for the establishment of student disciplinary standards by local boards of education, as well as procedures for imposing suspension or expulsion upon a finding that a student has violated those standards after a disciplinary officer or a tribunal has conducted an evidentiary hearing").

presence at school a potential danger to persons or property at the school or disrupts the educational process.[30]

In his briefs to the State Board and superior court (and now on appeal), K. B. argues that then-existing Paragraph N exceeded the statutory authority granted to the Local Board because some of its language—"includes, but is not limited to" and "is prohibited by the Georgia or United States criminal codes or would be punishable as a felony if committed by an adult"—allowed schools to discipline students for off-campus conduct *beyond* that allowed by OCGA § 20-2-751.5(c). The State Board agreed with this argument and—consistent with its previous decisions—determined that then-existing Paragraph N exceeded the scope of the jurisdiction provided to the Local Board under Georgia law and, therefore, was void in its entirety.[31] But in its order reversing the State Board, the superior court *did not* address this legal issue. Instead the court focused on whether Paragraph N was unconstitutionally

---

[30] (Emphasis added).

[31] See *G. H. v. McDuffie County. Bd. of Educ.*, Case No. 2018-33 (June 14, 2018) (https://apps.gadoe.org/peaboarddecisions last accessed March 3, 2026) (reversing local board's decision expelling student because local board failed to show its rule complied with the requirements outlined in OCGA § 20-2-751.5(c)); *S. B. v. Henry County. Bd. of Educ.*, Case No. 2018-12 (February 16, 2018) (https://apps.gadoe.org/peaboarddecisions last accessed March 3, 2026) (same).

vague—determining it was not as applied to K. B.—and on Paragraph N's (now abandoned) language allowing suspension or expulsion for off-campus conduct that would be a felony if committed by an adult. As a result, we vacate the superior court's order reversing the decision of the State Board and remand the case for it to address whether Paragraph N exceeded the Local Board's statutory authority under OCGA § 20-2-751.5(c); and, if so, whether that violation renders the rule void in its entirety or as applied to K. B.[32]

3. Because we vacate and remand this case for further proceedings, we do not address K. B.'s first enumerated error that the Local Board exceeded its statutory authority by suspending him for off-campus conduct that was not criminally chargeable as a felony.

*Judgment vacated and case remanded. Brown, C.J., and Barnes, P.J., concur.*

---

[32] See *S. G.*, 301 Ga. at 802-03(2) (remanding case involving expulsion of student for local board to properly apply the law); *D. R. H.*, 325 Ga. App. at 65(3) (reversing superior court's order in student disciplinary case because superior court incorrectly applied the law at issue).